285 So.2d 340 (1973)
Jamie Edwards MURPHY
v.
George C. STRINGER, Jr.
No. 5826.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1973.
Rehearing Denied November 30, 1973.
*341 Morphy, Freeman, Holbrook & Faulkner, A. D. Freeman, New Orleans, for plaintiff-appellant.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, H. Martin Hunley, Jr., New Orleans, for defendants-appellees.
Before LEMMON, J., and BAILES and FLEMING, JJ. pro tem.
LEMMON, Judge.
Plaintiff instituted this action against her former attorney to recover her damages allegedly resulting from the negligent handling of her husband's succession and to recover the fee retained by the attorney from succession funds. The suit was dismissed after a trial on the merits.
The primary issues on appeal are whether the attorney's representation constituted negligence which caused plaintiff to suffer any damages and whether defendant is entitled to all, or any, of the fee charged for the representation.
Plaintiff's husband died on November 23, 1963, being survived by plaintiff and by five children of a previous marriage. In his will the decedent gave plaintiff one-third of his property and the usufruct of the other two-thirds. Succession assets included five contiguous lots partially occupied by the home, two other vacant lots, furniture and an automobile, all of which were community property.
*342 Early in 1964 plaintiff signed an agreement to sell the two vacant lots and contacted defendant, who had been named in her husband's will as attorney for the executrix. Defendant's partner, who handled the firm's succession practice, probated the will, had plaintiff qualified and confirmed as executrix, and obtained authority for the private sale, the net proceeds of which were deposited in defendant's escrow account. Although other pleadings were filed and other documents prepared thereafter, the succession proceedings had not substantially progressed beyond this point when plaintiff discharged these attorneys in October, 1969.
Defendant's partner explained that he decided to undertake an administration of the succession in order to expedite the private sale to conclusion before the deadline contained in the agreement to sell. He reached this decision upon learning that four of the five heirs lived out of state, that one belonged to a religious order (causing concern over her ability to participate in the sale), and that plaintiff had advanced $8,500.00 of her separate funds to improve the community home.
As to the happenings thereafter, defendant's partner testified as follows: After the private sale he wrote to each of the heirs, explaining the proceedings to date and stating the estimated value of the succession assets.[1] In due course he was contacted by an attorney on behalf of the heirs. After reviewing plaintiff's records as to the separate funds used in the house improvement, he and the heirs' attorney agreed that this claim was valid and obtained judicial approval thereof. They then calculated the heirs' interest,[2] based on the estimated value of the assets, and filed a tableau of distribution signed by both attorneys.[3] Since plaintiff wanted to retain the home and since the heirs were not interested in owning the property, the attorneys attempted to negotiate a price at which plaintiff would buy the interest of each of the heirs in the succession assets. Plaintiff's offer of $300.00 for each heir's interest drew no response, and the attorney eventually withdrew from representing the heirs. The matter then remained dormant for about a year and a half. Meanwhile, plaintiff continued to occupy the house and occasionally checked on the progress of the proceedings. In 1967 another attorney undertook to represent the heirs, and price negotiations began again. Plaintiff's increased offer of $600.00 to each was rejected. In 1969 the heirs' attorney offered to accept $1,500.00 for each heir's interest. He (defendant's partner) stated by telephone he would recommend $900.00, but erroneously stated $1,500.00 in correspondence. He then drew up five acts of sale, each of which purported to convey a particular heir's interest in the house and five lots for $900.00,[4] but upon receipt of these documents the heirs' attorney rejected the price.
About the same time, plaintiff obtained an offer to purchase the lots adjoining the home. Defendant's firm undertook to obtain approval of a resubdivision of the lots as required by parish ordinance, but this relatively simple procedure was delayed by a survey error. When the sale was jeopardized by the delay, plaintiff sought new counsel. Defendant returned plaintiff's papers and the funds from his escrow account, after deducting his fee and costs therefrom.
*343 The above testimony of defendant's partner was not seriously disputed by plaintiff, who apparently became disenchanted when she almost lost the 1969 sale because of delays. After employing new counsel, she agreed to pay the heirs $1,500.00 each, and her lawyer then completed the succession. Asserting that this disadvantageous settlement was caused by defendant's negligence and delays, plaintiff then instituted this action.
As to the negligence aspect, the trial judge found in effect that the errors and inaccuracies did not result in any damage to plaintiff. The judge further found that the fee was reasonable for the services performed, particularly those in the early proceedings.
We agree with the trial judge's findings as to plaintiff's damages. There was no complaint about the decision to utilize the administration in order to comply with the purchase agreement executed by plaintiff. The recognition of the separate funds also redounded to plaintiff's benefit, and the attempted negotiation of a cash price for the heirs' interest could not be criticized, except for the omission from consideration of the disposable portion. Nevertheless, plaintiff did not prove that this omission, or the other errors and inaccuracies, or the delays, caused her any damages. There was no detriment shown from the erroneous calculation of plaintiff's share of the succession. Indeed, the pivotal problem in handling the succession was not the legal problem of accurately calculating the percentage interest of plaintiff and the heirs, but the practical problem of negotiating a price that each heir would accept to allow plaintiff to retain all of the succession assets. As stated by the trial judge, the value in law and fact and the value in expediency are two different things, and a premium is often paid to obtain a result. The erroneous and unauthorized $1,500.00 offer was immediately withdrawn, and while this error possibly made negotiations for a lower price more difficult, no causal connection has been shown between this error and plaintiff's apparently voluntary decision later to settle at this price.
Defendant might have obtained the result plaintiff desired by filing for a partition before or after completing the succession. Neveretheless, this remedy was still available when defendant was discharged, and plaintiff did not prove any detriment in this regard because of delays or of failure to utilize this procedure. Placing the heirs in possession would have been neither beneficial nor detrimental to plaintiff's right to a partition.
We next consider the question of whether defendant was entitled to all or any of the fee retained by him.[5] In addition to court costs and appraisal, survey and resubdivision application expenses, defendant charged $863.50 for services in handling the succession (in accordance with the prevailing fee schedule), $150.00 for services in connection with the resubdivision, and $175.00 for preparation of the unused five acts of sale. Plaintiff does not contest the fee for the completed resubdivision procedure.
In the absence of an express agreement, the fee provided in minimum schedules for handling the administration of a succession contemplates charges for completed work. Just as defendant's handling of the succession did not result in any damages to plaintiff, neither did the limited services performed after the initial proceedings result in any benefit to her. Furthermore, the services after the private sale and the recognition of the separate funds consisted essentially of an offer in 1964, another in 1967, and a final erroneous offer in 1969. While defendant's partner's inaction or lack of success in this regard did not cause plaintiff any damages, by the same token defendant could not assess *344 a fee based on diligently and successfully handling the succession to completion.
Had the negotiations been successful, many services remained to be performed, and in fact plaintiff did subsequently pay to have these services performed by her new counsel. Inasmuch as plaintiff was required to expend $500.00 for completion of the work undertaken by defendant (and we find this charge reasonable), we accordingly reduce the fee charged by defendant for handling the succession.
Additionally, we disallow the charges for the unused acts of sale. The instruments purported to convey to plaintiff an incorrect fractional interest in the house and five lots and made no provision for the $3,750.00 in the escrow account or for the other succession assets. Since the documents could not have been used even if a price agreement were reached, the fee for preparing the documents cannot be allowed.
Finally, defendant claims a set-off of $500.00, the amount he advanced to plaintiff during the course of his representation. When defendant recalled this advance in his testimony, his counsel attempted to amend the answer. Since the advance was made without the required court authority and from the general rather than the escrow account, the trial judge apparently considered this to be a personal loan and refused to permit the amendment. Such a decision by the trial judge is largely discretionary, and we find no abuse of that discretion under the circumstances of this case.
Plaintiff's individual capacity to recover the fee was put at issue by an exception of no right of action filed after the trial. However, she had filed the suit individually and as testamentary executrix of the succession. Inasmuch as the fee was deducted from succession assets, plaintiff is entitled to partial recovery of the fee in her capacity as executrix.
Accordingly, the judgment of the trial court is reversed, and it is now ordered that judgment be rendered in favor of Jamie Edwards Murphy, as testamentary executrix of the Succession of James Joseph Murphy, and against George C. Stringer, Jr. in the sum of $675.00, together with legal interest from October, 1969 until paid. All costs in both courts are assessed to defendant.
Reversed and rendered.
NOTES
[1] The principal asset, the home and adjoining lots, had been appraised at $13,500.00.
[2] Admittedly, defendant's partner neglected to include the disposable portion given to plaintiff under the terms of the will.
[3] Plaintiff contends that the tableau of distribution was meaningless at this stage of the proceedings and served no purpose.
[4] The instruments did not mention the money in escrow or the other succession assets. Apparently a proposed petition for possession and judgment of possession were drafted at the same time. These documents, introduced into evidence, also omitted consideration of the disposable portion.
[5] The ethical propriety of deducting a fee without authorization from funds held in trust for a client is not before us.